**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.** **CASE NO. 3:26cr57-MCR**

**JAMES CRAIG,**

**Defendant.**
___________________________________/

# ORDER

Defendant James Craig is charged with possession with intent to distribute 100 kilograms or more of marijuana, which was discovered in his trailer during a warrantless highway agricultural inspection. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B)(vii). Craig moved to suppress the evidence on grounds that he did not consent to the search, and a hearing was held. After careful consideration of the testimony and the arguments of the Parties, the Court grants the motion.

## I. Background

On Thanksgiving Day, November 27, 2025, Officer Tighe Kearns of the Forida Department of Agriculture ("FDOA") and a sworn law enforcement officer was stationed at the one-mile marker on Interstate 10 eastbound in Escambia County, Florida, when, at approximately 11:30 a.m., a black SUV pulling an enclosed trailer failed to stop at the inspection station. Under Florida law, every enclosed cargo

trailer is required to pull over into the inspection station to provide details of the cargo so officers can ensure that nothing within the trailer is detrimental to Florida's agriculture. *See* Fla. Stat. § 570.15(2).[1] Officer Kearns and his partner conducted a traffic stop after Craig passed the station without stopping.

Officer Kearns explained to Craig the reason for the stop—that they were looking for agriculture related commodities. Because Craig did not have any documentation or bill of lading for the cargo, Officer Kearns was required to conduct a visual inspection. He wrote in his case report that Craig showed signs of agitation and "didn't believe he wanted to let us inspect his trailer." ECF No. 29–2. Craig asked about the consequences if he refused consent, and Officer Kearns stated the statutory basis for his regulatory authority, gave Craig an opportunity to look up the statue, and explained to Craig that if he refused consent, he would be detained while they applied for an administrative warrant. Officer Kearns also told Craig that an administrative warrant would be issued.

[1] The statute makes it "unlawful for the driver of any vehicle, other than one exempted in sub-subparagraph (1)(a)(1)(g) or one authorized pursuant to subsection (5), to pass any official agricultural inspection station without first stopping and submitting the vehicle for inspection." Fla Stat. § 570.15(2) (a violation of constitutes a second degree misdemeanor).

Craig then advised them that he did not have the keys to the locks on the trailer—his friend in an RV driving ahead of him had the keys.[2] Officer Kearns told Craig he could call his friend and have him come back with the keys to unlock the trailer. Craig made the call, which suggested to Officer Kearns that he was willing to consent to a search of the trailer. Officer Kearns said he overheard Craig placing the call and stating that he wasn't going to make it home for Thanksgiving. This caused Officer Kearns some concern because this was merely a routine regulatory inspection, so he asked Craig to step out of the SUV while they waited for the keys to arrive. Craig complied but appeared agitated. In his report, Officer Kearns wrote that they instructed Craig to exit the vehicle due to "Craig's continued demeanor and apprehensiveness to allowing us to inspect the trailer." ECF No. 29–2 at 1. They waited 30 minutes or so, and no one came with the keys. Craig made another call, but still no one arrived.

When they could wait no longer, Officer Kearns told Craig that if his friend wasn't able to come back with the keys, "we would have to gain access to the trailer"

[2] There is no dispute that Craig did not have the keys.

and "we would have to cut the locks."[3] He did not ask Craig whether that was alright with him but said Craig did not make any remarks about refusing inspection. Officer Kearns had bolt cutters and testified that they cut the locks and "had Mr. Craig open the trailer" so they could conduct the inspection. In his report, Officer Kearns wrote that after cutting the locks, they "*instructed* Craig to open the trailer door," ECF No. 29–2 at 1 (emphasis added), and he testified at the hearing that he told Craig, "We need you to open the door." Craig complied.

Officer Kearns testified that he believed they had Craig's consent to proceed with searching the trailer because at no point did Craig tell them to stop. In Officer Kearns's opinion, if Craig had refused, they would have applied for a regulatory inspection warrant, and it would have been granted. When the undersigned questioned Officers Kearns about whether he had *asked* Craig for his consent, the answer was a clear "no"—"we don't ask." Craig confirmed at the hearing that the officers never asked for his permission/consent to search the trailer or to cut the locks and that after they busted both locks, he was *told*, "go ahead and open the trailer."

[3] By then, five officers were also present, all with firearms in their possession. According to Craig, these were not his locks and without the keys, he did not have the means to comply with their demand.

Craig testified that he complied with the officer's instruction, just as he had complied when instructed to step out of the vehicle.

Once inside the trailer, Officer Kearns observed a large quantity of black trash bags and smelled a strong odor of marijuana. Craig told the officers that the bags were full of T-shirts, but the inspection revealed vacuumed sealed bags of what the officers presumed was cannabis, in packaging consistent with narcotics trafficking. After the substance field tested positive for THC, Craig was placed under arrest.[4]

## II. Discussion

The Fourth Amendment protects against unreasonable searches and seizures, *see* U.S. Const. amend. IV, and evidence obtained through an illegal search or seizure is subject to exclusion. *See Segura v. United States*, 468 U.S. 796, 804 (1984); *see also United States v. Watkins*, 13 F.4th 1202, 1210 (11th Cir. 2021) (noting the exclusionary rule is subject to exceptions and the remedy is reserved for situations where the benefit of deterrence outweighs the social costs). Except in certain specified situations, a search of private property without proper consent is unreasonable in the absence of a valid search warrant. *See Camara v. Mun. Ct. of*

---

[4] Officer Kearns testified that the levels of THC and the product is what classifies it as either medical or criminal. He explained that medical marijuana is packaged in no greater amounts than a prescription, and if Craig was transporting this for legal purposes, it would be accompanied by several certifications and a bill of lading—documentation Craig did not possess.

*City & Cnty. of San Francisco*, 387 U.S. 523, 529 (1967); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (warrantless search is valid if the officer first obtains the individual's voluntarily consent).

An administrative inspection or search authorized by law is also subject to the warrant requirement of the Fourth Amendment. *Camara,* 387 U.S. at 534; *see also Marshall v. Barlow's Inc.*, 436 U.S. 307, 323 (1978) (an administrative warrant provides "assurance[] from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria."). Under Florida law, the Department of Agriculture has statutory authority to search a non-exempt vehicle, which includes a motor vehicle pulling a covered cargo trailer, and to stop and detain the vehicle for the inspection if the driver failed to stop at an agricultural inspection station. *See* Fla Stat. § 570.15(1), (2), (3). If access for the inspection is refused, the Department employee "may apply for, obtain, and execute a search warrant for regulatory inspection" pursuant to Fla. Stat. §§ 933.20–933.30. Fla Stat. § 570.15(1)(c); *see also Roche v. State*, 462 So. 2d 1096, 1099 (Fla. 1985) (finding search of a van that failed to stop at an inspection station pursuant to a valid administrative search warrant was constitutional). Although "probable cause" is not required, an inspection warrant can only be issued on "cause" that is "supported by affidavit,

particularly describing the place, dwelling, structure, or premise to be inspected and the purpose for which the inspection is to be made."[5] Fla. Stat. § 933.21. The affidavit must also "contain a statement that *consent to inspect has been sought and refused* or a statement setting forth facts or circumstances reasonably justifying the failure to seek such consent."[6] *Id.* (emphasis added). The Florida Supreme Court has explained that the regulatory search authority of Fla. Stat. § 570.15 sets out a proper scheme to protect against specific threats to health and safety along with neutral criteria to guide the officers' conduct. *Roche*, 462 So. 2d at 1101. The Florida Supreme Court also has noted that citizens' property rights are protected by the requirement for a warrant, which is issued on a showing that the property to be searched is within the regulatory scheme. *Id.*

The Government argues that no warrant was required for an administrative inspection of Craig's trailer because he did not refuse access to the trailer and the officer reasonably concluded that Craig consented by implication when opening the

[5] Cause will be found to exist when the "reasonable legislative or administrative standards for conducting a routine or area inspection are satisfied with respect to the particular place" to be inspected "or if there is reason to believe that a condition of nonconformity exists." Fla. Stat. § 933.22.

[6] Additionally, before issuing an inspection warrant, the judge must examine on oath the applicant or any other witness and be satisfied that grounds for granting the application exist. Fla. Stat. § 933.23. Willful refusal to permit an inspection that is authorized by a warrant is punishable as a second degree misdemeanor. Fla. Stat. § 933.27.

trailer door (after the locks were cut).[7] In its closing argument at the hearing, the Government argued for the first time that Craig's failure to refuse access to the trailer at any point is synonymous with implied consent. On this record, the Court disagrees.

Whether an individual voluntarily consents to a search of his or her property––either express or implied—is a question of fact to be determined by the totality of the circumstances. *United States v. Blake*, 888 F.2d 795, 798 (11th Cir. 1989). It is the government's burden to prove both "that the defendant consented to the search and that this consent was given freely and voluntarily, and was not mere acquiescence to a claim of lawful authority." *United States v. Massell,* 823 F.2d 1503, 1507 (11th Cir. 1987)[8] (citing *Bumper v. North Carolina*, 391 U.S. 543, 548–49 (1968)). If consent is established, the Court must determine whether that consent was given voluntarily. *See United States v. Garcia*, 890 F.2d 355, 360 (11th Cir.

---

[7] In its initial argument to the Court, the Government maintained that neither consent nor a warrant was required for any administrative search. That argument is contrary to the law stated above but the Government shifted its argument at the hearing, conceding that for purposes of this motion, it is not necessary to determine all of the ins and outs of Florida's regulatory scheme, and instead, the motion should be denied based on Craig's implied consent to the search.

[8] In *Massel*, the Eleventh Circuit concluded that the district court had made "a plausible finding based upon the evidence that Massell consented to the search of the vessel," where a special agent with the customs service testified that Massel told them, "you're welcome to search the vessel" and did not object even when the vessel was pulled out of the water. 823 F.3d at 1507 n.4.

1989) (stating, "for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice"). That inquiry is made on a case-by-case basis and "is not susceptible to neat talismanic definitions." *Blake*, 888 F.2d at 798. Factors to be considered include: "(1) the voluntariness of the person's custodial status, (2) the presence of coercive police procedure, (3) the extent of the person's cooperation with law enforcement, (4) whether the person knew that he could refuse consent, and (5) the person's education and intelligence." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 522 (11th Cir. 2019) (internal quotations omitted); *see also United States v. Chemaly,* 741 F.2d 1346, 1352 (11th Cir. 1984) (considering express or implied coercion on the issue of voluntariness and concluding that retaining an airline ticket was significant as was the fact that the suspect had not been informed of his right to refuse).

To be clear, it is undisputed on this record that consent was not expressly given, nor was it requested. Officer Kearns testified that he never *asked* for Craig's consent to search, to break the locks, or to enter the trailer—saying, "we don't ask."[9]

---

[9] This is contrary to the statutory scheme, which shows that the officers must *seek* consent in a regulatory inspection context. Specifically, the statute shows that when consent is refused, a warrant is required, and to obtain the warrant, the officer is required to present an affidavit including "a statement that consent to inspect *has been sought* and refused." Fla. Stat. § 933.21 (emphasis added). After a warrant is obtained, a refusal to permit an inspection becomes a second degree misdemeanor. Fla. Stat. § 933.27. This shows that the Legislature contemplated there

He felt it was enough to explain to Craig his right to refuse consent and that a warrant would be obtained if he refused access. That does not satisfy the Government's burden to prove consent. First, failing to object to a search alone does not amount to consent. *See United States v. Gonzalez*, 71 F.3d 819, 829–30 (11th Cir. 1996) (noting the court has expressed "hesitancy to find implied consent (*i.e.*, consent by silence) in the Fourth Amendment context"), *overruled in part on other grounds by Arizona v. Gant,* 556 U.S. 332 (2009). Second, while the Eleventh Circuit has found implied consent in limited circumstances, it must be based on some conduct by the defendant. *See United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002) (finding "a distinction between the failure to object when officers follow someone into their home [which was not implied consent in *Gonzalez*] and the act of 'yielding the right-of-way' to officers at the person's front door," which was implied consent in *Ramirez Chilel*).

The totality of the circumstances show that the Government has not established Craig's implied consent to search the trailer. Craig initially expressed to Officer Kearns that he did not believe he wanted to let the officers inspect the trailer. Instead of inquiring further as to whether Craig consented, Officer Kearns ignored

---

would first be a request for consent and once obtained, the regulatory warrant has teeth. The officers cannot simply bypass the requirement to seek consent.

this and implied Craig's consent from his failure to more specifically refuse. And when Officer Kearns told him he could call his friend to bring the keys, Craig tried to comply by making the call. This attempt to comply, however, cannot be taken as consent to search. Craig never obtained the keys and never told the officers that they could proceed without the keys by busting the locks—Officer Kearns simply determined they could wait no longer and *told Craig* that they had to get into the trailer and that they were going to bust the locks. Craig did not physically or verbally get in their way, but that is the most that can be said here. *See Gonzalez*, 71 F.3d at 830 ("The government may not show consent to enter from the defendant's failure to object to the entry.") (internal quotations omitted, alteration accepted). Craig had voiced his apprehension about allowing the search, saying initially that he didn't believe he wanted them to search, and no action on his part shows that he later welcomed or invited the officers to break the locks or search the trailer. Instead, after they broke the locks, Officer Kearns instructed Craig to open the door, and he obeyed. Opening the door on being told to do so by law enforcement was also not an act of implied consent but mere acquiescence to the officers' authority; on this record, Craig's compliance is not tantamount to consent. *See United States v. Edmondson*, 791 F.2d 1512, 1515 (11th Cir. 1986) (finding no implied consent to enter defendant's apartment where defendant opened his door on being told to do so

by the arresting officer, stepped back, and placed his hands on his head, indicating only "acquiescence to a show of official authority"). To find implied consent based on the officers' entry into the trailer alone would stand the Fourth Amendment warrant requirement on its head. *See Ramirez-Chilel*, 289 F.3d at 752 ("To do so would be to justify entry by consent and consent by entry. This will not do.") (internal quotations omitted).

Even assuming for the sake of argument that implied consent could be found on these facts, it was not voluntary and uncoerced. Craig was not free to leave. The officers had informed him of his right to refuse but did not seek his consent to search and instead took the position that they were not required to ask. He was lawfully detained by five armed officers who instructed him to open the trailer, after basically telling him that they were required to bust the locks to get into the trailer and that a warrant most certainly would be issued. Craig's mere acquiescence or compliance with the law enforcement officers' subsequent command that he open the door does not show *voluntary* consent. *See Bumper*, 391 U.S. at 548–49 ("When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful

authority.”). Without a warrant or valid consent, the search was unlawful, and the evidence is subject to suppression.

The Government argued for the first time at the hearing that, if the officers misapprehended whether Craig had consented, the inevitable discovery doctrine should apply to preclude suppression of the evidence because a regulatory warrant would have been issued in any event. The Eleventh Circuit, quoting the Supreme Court, has cautioned that “the exclusionary rule ‘has always been our last resort, not our first impulse.’” *United States v. Watkins,* 13 F.4th 1202, 1210 (11th Cir. 2021) (quoting *Utah v. Strieff,* 579 U.S. 232, 238 (2016)). Suppression is ordinarily reserved for situations “where its deterrence benefits outweigh its substantial social costs.” *Id.* (internal quotations omitted). For this reason, several exceptions to the exclusionary rule exist, most notably here, the doctrine of inevitable discovery, which allows the evidence to be admitted despite the unlawful search if it “would have been discovered even without the unconstitutional source.” *Id.* (citing *Nix v. Williams*, 467 U.S. 431, 443 (1984)). But, in this circuit, the inevitable discovery doctrine only applies where “the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct” based on evidence already in their possession. *United States v. Johnson*, 811 F. App’x. 564,

571 (11th Cir. 2020) (emphasis in original) (quoting *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007)).

The Government's argument fails to persuade on this record. Even assuming a high probability that a regulatory inspection warrant would ordinarily issue, the officers here were not actively pursuing one and plainly had no intention of seeking one. Also, it is not certain that a regulatory inspection warrant would have issued here because, based on what occurred before the illegal search, the officers could not in good faith have presented an affidavit stating that "consent to inspect has been sought and refused" nor could they state any circumstances reasonably justifying their failure to seek consent, as required by Fla. Stat. § 933.21. The Court concludes that there is a deterrence benefit to be gained by exclusion in this case that substantially outweighs the societal costs. As the Florida Supreme Court has recognized, the Legislature included the warrant requirement as an essential element of the regulatory search authority of Fla. Stat. § 570.15, guiding the officers' conduct while also protecting the citizens' property rights, in this instance Craig's. *Roche*, 462 So. 2d at 1101. To allow officers to routinely bypass the need to *seek* consent would render the statute and its warrant requirement meaningless and would serve only to encourage officers and inspectors to continue ignoring it. Thus, the exclusionary rule serves an essential deterrent in this case.

Accordingly, Craig's Motion to Suppress, ECF No. 20, is **GRANTED**.

**DONE AND ORDERED** this 22nd day of November 2026.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**